

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------
UNITED STATES OF AMERICA,
                                    :     12-cr-839 (JSR)
          -v-                       :
                                    :     MEMORANDUM
RAFAEL ANTONIO GARAVITO-GARCIA,     :
                                    :
          Defendant.                :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

Defendant Rafael Antonio Garavito-Garcia was extradited to the United States from Colombia on July 22, 2014 to face charges that he conspired to commit narcoterrorism, to distribute cocaine intending and knowing that it would be imported into the United States, to provide support to a foreign terrorist organization, and to acquire and transfer anti-aircraft missiles. On November 13, 2014, Garavito-Garcia moved pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A) to dismiss the indictment for lack of subject matter jurisdiction, asserting that his removal to the United States violated the extradition treaty between the United States and Colombia and that the treaty required he be set free. In a December 30, 2014 Order, this Court denied the motion. This Memorandum explains the reasons for that ruling.

The United States requested Garavito-Garcia's extradition through a May 31, 2013 diplomatic note. Declaration of Shane Thomas Stansbury ("Stansbury Decl."), Ex. A, Diplomatic Note No. 0945. The Colombian authorities apprehended Garavito-Garcia on April 5, 2013, and an extradition order issued on October 28, 2013. See Declaration

of Robert W. Ray ("Ray Decl.") ¶ 5; Stansbury Decl., Ex. C, Ministry of Justice and the Law, Resolution No. 293 (Oct. 28, 2013), at 7. Garavito-Garcia, who was at the time 68 years old, appealed the order, arguing, among other things, that he should not be extradited because he was in poor health. See Stansbury Decl., Ex. E, Ministry of Justice and the Law, Resolution No. 374 (Dec. 26, 2013), at 2. On December 26, 2013, the Colombian Ministry of Justice and the Law issued Resolution No. 374 to confirm the extradition order; but the Resolution, crediting Garavito-Garcia's health concerns, also instructed the Colombian Attorney General to obtain a medical report on the feasibility of transferring Garavito-Garcia before the Colombian authorities surrendered him to the United States. Id. at 10. Five days later, Garavito-Garcia suffered a stroke. Ray Decl. ¶ 10.

On February 14, 2014, notwithstanding that a medical report had yet to issue, the Colombia Government authorized the United States to remove Garavito-Garcia. Id. ¶ 11. Less than two weeks later, the National Institute of Legal Medicine and Forensic Science in Colombia (the "National Institute") provided its opinion that Garavito-Garcia had to be transported in a "medical aircraft" to ensure his safety during travel to the United States. See Stansbury Decl., Ex. G, Letter from the Director of International Management to Benjamin Ziff, Chargé d'Affaires, U.S. Embassy (Feb. 26, 2014). After receiving this report, the Colombian government "suspended" the "availability" of Garavito-Garcia "until the necessary and

2

indispensable conditions designed to safeguard [his] life and health" could be met. Id.

Notwithstanding the fact that the delay was designed to accommodate his health issues, Garavito-Garcia then challenged his continued detention in Colombia on the ground that he should have been extradited sooner. Specifically, Garavito-Garcia invoked Article 511 of the Colombian Criminal Code, which requires that the subject of an extradition request be transferred to the requesting state within thirty days of when "the person was made available to the requesting state." Ray Decl. ¶ 15. In an initial response to Garavito-Garcia's counsel, before the thirty-day time limit had expired, the Colombian Attorney General explained that the time limit imposed by Article 511 had been suspended in accordance with the National Institute's opinion and Resolution No. 374. See Ray Decl., Ex. E, Office of the Attorney General, Denial of Petition for Home Detention and Release of Rafael Antonio Garavito-Garcia ("Petition Denial"), at 5-6. Nonetheless, Garavito-Garcia, through counsel, continued to press his purported rights under Article 511, asserting in an April 2, 2014 letter that Article 511 admits no exceptions "neither explicitly nor implicitly" and mandated that he be released. See Ray Decl., Ex. B, Letter from Jaime Javier Valderrama Ovalle to L. Eduardo Montealegre, Attorney General, at 2. The Colombian Attorney General was unpersuaded, and Garavito-Garcia remained in detention. See Ray Decl. ¶ 18.

On June 26, 2014, the United States was informed that the National Institute had issued a second opinion on June 13. See Stansbury Decl., Ex. I, Letter from the Director of International Management to Kevin Whitaker, Ambassador, U.S. Embassy (June 26, 2014). As a result of this opinion, which stated that "the risk of complications [would be] reasonably low" if Garavito-Garcia travelled on a medical airplane with trained personnel, the Colombian Government once again made the defendant available to the United States. Id. On July 22, 2014, Garavito-Garcia was transported to the Southern District of New York.

Now, in his motion to dismiss, Garavito-Garcia seeks to relitigate his claim that he should have been set free as a result of the Colombian authorities' alleged failure to timely comply with Article 511. This time, however, Garavito-Garcia relies not only on Article 511, but also on the extradition treaty between the United States and Colombia. See Ray Decl., Ex. C., Extradition Treaty with Republic of Colombia, Sept. 14, 1979 (the "1979 Treaty"). Article 12 of the 1979 Treaty provides that, once an extradition order issues, if the subject of the extradition request "is not removed from the territory of the Requested State within such time as may be prescribed by its laws . . . , that person shall be set free." Id. at 5-6. In other words, the 1979 Treaty incorporates Article 511. Accordingly, Garavito-Garcia contends that, because Article 511 was allegedly violated, the Treaty requires that he "shall be set free."

4

In response, the Government, among other things, challenges Garavito-Garcia's assertion that he was extradited pursuant to the 1979 Treaty, that the Treaty creates judicially enforceable rights, and that he has "standing" to raise a violation of the Treaty; but even if the Court assumes each premise of Garavito-Garcia's argument arguendo, his claim fails nonetheless.[1] This is because it is settled that "courts cannot second-guess another country's grant of extradition to the United States." United States v. Campbell, 300 F.3d 202, 209 (2d Cir. 2002). In Campbell, the defendant sought reversal of his conviction on the ground that the extradition treaty between the United States and Costa Rica did not include among the list of extraditable offenses the firearms charges for which he was convicted. Id. The Second Circuit, after noting that the firearms offenses that the defendant took issue with had been presented to the Costa Rican authorities in the extradition request, rejected the his argument: "Giving the required deference, we will presume that if the extraditing country does not indicate that an offense specified in the request is excluded from the extradition grant, the extraditing country considers the offense to be a crime for which extradition is permissible." Id. This approach, the court explained, promotes "the maintenance of cordial international relations." Id.

---

[1] The Court does not view the Government's standing argument as presenting an Article III question that requires resolution before the Court reaches the merits of Garavito-Garcia's motion. See United States v. Day, 700 F.3d 713, 721 (4th Cir. 2012).

5

This case presents even more compelling reasons to defer to the foreign government's determination of the lawfulness of the extradition. Unlike in Campbell, where the Second Circuit "presume[d]" that the Costa Rican authorities had considered the defendant's concerns, Garavito-Garcia explicitly raised his arguments under Article 511 to the Colombian Attorney General and received an explicit response. Although Garavito-Garcia did not reference Article 12 of the 1979 Treaty, nonetheless, because Article 12 merely incorporates Colombian law, the difference, as Garavito-Garcia recognizes, is immaterial. See Memorandum of Law in Support of Pre-Trial Motion to Dismiss Indictment at 6 ("[Garavito-Garcia's] extradition was not accomplished within the 30-day time limit prescribed by Article 511 of the Colombian Code of Criminal Justice and, by extension, Article 12 of the Extradition Treaty.") (emphasis added). The Colombian Attorney General heard and rejected Garavito-Garcia's arguments regarding Article 511, and deference in the context of matters involving international extradition requires this Court to follow suit. "It could hardly promote harmony to request a grant of extradition and then, after extradition is granted, . . . take the stance that the extraditing nation was wrong to grant the request." See Campbell, 300 F.2d at 209

Garavito-Garcia fails to meaningfully distinguish Campbell. He argues that Campbell's rule of deference applies only to a foreign government's determination of a discretionary matter, whereas Article 12 of the 1979 Treaty mandates that Garavito-Garcia "shall"

6

be set free if Colombia failed to comply with the relevant time limits. To begin with, the relevant portion of Campbell makes no mention of discretion. But even accepting Garavito-Garcia's framing of that case, the declaratory language of Article 12 comes into play only once a person "is not removed from the territory of the Requested State within such time as may be prescribed by its laws." 1979 Treaty at 5-6. Here, the Colombian Attorney General determined that the time limit "prescribed by" Article 511 could be, and in this case was, suspended. Petition Denial at 5-6. Accordingly, Garavito-Garcia was removed from Colombia within the relevant time limit and no violation of Article 511 of Colombian law or Article 12 of the 1979 Treaty occurred. To conclude otherwise, this Court would have to disagree with the Colombian Attorney General on his interpretation of Colombian law. Doing so would be in direct contravention of the Second Circuit's instructions in Campbell and of common sense in the arena of international relations.

For the foregoing reasons, the Court reaffirms its denial of Garavito-Garcia's motion to dismiss the indictment.

Dated:   New York, NY
         March 11, 2015

                                            _____
                                            JED S. RAKOFF, U.S.D.J.

7