**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                        :
UNITED STATES OF AMERICA
                                        :        (S5) 12 Cr. 839 (JSR)
        - v. -
                                        :
RAFAEL ANTONIO GARAVITO-GARCIA,
        a/k/a "El Viejo," and           :
GUSTAVO PEREZ-GARCIA
        a/k/a "Gato,"                   :

                Defendants.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

## DEFENDANT RAFAEL ANTONIO GARAVITO-GARCIA'S
## SENTENCING MEMORANDUM

---

                        Robert W. Ray
                        *Attorneys for Defendant Rafael Antonio Garavito-Garcia*

                        Fox Rothschild LLP
                        100 Park Avenue, 15th Floor
                        New York, New York 10017
                        Tel. No.: (212) 878-7993
                        rwray@foxrothschild.com (e-mail)

ACTIVE 30723165v3

## PRELIMINARY STATEMENT

Through counsel, Rafael Antonio Garavito-Garcia ("Mr. Garavito-Garcia" or the "Defendant"), respectfully submits this sentencing memorandum in connection with the sentencing scheduled for Monday, July 20, 2015 at 4:00 p.m.. Mr. Garavito-Garcia was indicted and convicted on the following four counts of Indictment (S5) 12 Cr. 839 (JSR) (the "Indictment"):  (1) conspiracy to commit a narco-terrorism offense, in violation of Title 21, United States Code, Section 960(a); (2) conspiracy to import cocaine into the United States, in violation of Title 21, United States Code, Section 963; (3) conspiracy to provide material support to a foreign terrorist organization, in violation of Title 18, United States Code, Sections 2339B(a)(1) and (d)(1), and 3238; and (4) conspiracy to acquire and transfer anti-aircraft missiles, in violation of Title 18, United States Code, Sections 2322g(a)(1), (b) and (c), and 3238. The United States Probation Office's ("Probation Office") Presentence Investigation Report ("PSR") calculates the adjusted offense level for Mr. Garavito-Garcia at level 43. PSR ¶ 75. With a criminal history category of I, the Guidelines' recommended sentence is life imprisonment for Mr. Garavito-Garcia; however, the Probation Office instead recommends a variance to the mandatory minimum sentence in this case of 300 months, or 25 years. PSR, Sentencing Recommendation at 22. In light of the statutorily mandated sentence of 300 months on Count Four, the limits on seeking and imposing a life sentence pursuant to Diplomatic Note No. 0201 (the "Note") between the United States and the Republic of Colombia (a copy of which is attached hereto as Exhibit A), and Mr. Garavito-Garcia's age and deteriorating health, Defendant respectfully requests that the Court impose the Probation Office's recommended sentence of 300 months, or 25 years.

## NATURE AND CIRCUMSTANCES OF THE OFFENSE

The Government's evidence at trial demonstrated Mr. Garavito-Garcia's involvement in a conspiracy with his co-defendants, Saliu Sisse, Gustavo Perez Garcia, Manuel Mamadi Mane, and Antonio Indjai, along with two DEA confidential sources posing as FARC associates (collectively the "Confidential Sources"), to facilitate and coordinate the movement of FARC-owned cocaine from Colombia to customers in Guinea-Bissau between June 2012 and January 2013. (PSR ¶ 23-25). Mr. Garavito-Garcia, the other co-defendants, and the Confidential Sources also agreed to obtain weapons with the assistance of Guinea-Bissau's military leadership, Mr. Indjai, and Mr. Indjai's son to be provided to the FARC. *Id.* at ¶ 24. During the course of the conspiracy, Mr. Garavito-Garcia along with the other co-defendants and met with Guinea-Bissau military officials to discuss the proposed drug and weapons scheme. *Id.* at ¶ 25.

Mr. Garavito-Garcia, along with co-defendant Gustavo Perez-Garcia, was arrested on April 5, 2013 in Colombia pursuant to Note Verbale No. 0443 by the United States seeking Mr. Gararvito-Garcia's provisional arrest pending extradition to face the charges contained in the instant Indictment. Republic of Colombia Ministry of Justice and the Law Resolution No. 293 ¶ 1 ("Resolution No. 293") (a copy of which is attached hereto as Exhibit B). Mr. Garavito-Garcia's extradition to the United States was conditioned on the terms contained within the Note between the United States Government and the Republic of Colombia. Pursuant to the Note "[a]lthough the maximum statutory penalty for the charge for which extradition was approved is life imprisonment, the Government of the United States assures the Government of Colombia that a sentence of life imprisonment will not be sought or imposed if Garavito-Garcia is extradited to the United States."

Page **3** of **12**

Mr. Garavito-Garcia was detained in Colombian custody until July 22, 2014, when he was finally extradited to the United States. PSR ¶ 47. Since his arrival in the United States, Mr. Garavito-Garcia has been recovering at Kingsbrook Jewish Medical Center in Brooklyn, New York from a stroke he suffered in December 2013 while in Colombian custody. *Id.* at ¶ 9.

## DISCUSSION

The factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence of 300 months imprisonment – both the statutory mandatory minimum sentence required by Count 4 and the Probation Office's recommended sentence – would be "sufficient, but not greater than necessary" to achieve the aims of sentencing with respect to Mr. Garavito-Garcia.

**A.    Second Circuit's Interpretation of Diplomatic Notes Regarding Extradition**

It is well established in the Second Circuit that "[b]ased on international comity, the principle of specialty generally requires a country seeking extradition to adhere to any limitations placed on prosecution by the surrendering country." *United States v. Baez*, 349 F.3d 90, 92 (2d Cir. 2003). However, courts still maintain their independence as a co-equal branch of the government and their discretion in sentencing decisions. *Id.* at 93. Against this backdrop, courts within the Second Circuit construe diplomatic notes narrowly, finding that where the surrendering country does not make express demands regarding a term of sentencing, there is no agreement between the United States Government and the surrendering nation as it relates to that specific condition. *Cf., e.g., id.* at 92-93 (holding that district court did not abuse its discretion by imposing life imprisonment where defendant's diplomatic note only prohibited seeking, and not *seeking and imposing,* such sentence).

A common condition of diplomatic notes regarding extradition is that a sentence of life imprisonment will not be sought, or sought and imposed. *See, e.g., United States v. Lopez-*

*Imitalo*, 305 Fed. App'x 818, 819 (2d Cir. 2009). The Second Circuit has also interpreted the "life imprisonment" ban narrowly, holding that a life sentence is not equivalent to a sentence of a term of years even if that term will exceed the defendant's life expectancy. *See United States v. Sanpedro*, 352 Fed. App'x 482, 486 (2d Cir. 2009) (holding that if requested country intended sentence imposed by requesting country not to exceed defendant's life expectancy, former country could have included such language in note conditioning his extradition); *see also United States v. Cuevas*, 496 F.3d 256, 267-68 (2d Cir. 2007) (strictly and narrowly construing the extradition decree).

Recently, the Second Circuit in a split panel decision further narrowed an extradited defendant's ability to challenge his sentence on grounds that it violates the terms of extradition. *See United States v. Suarez*, No. 14-2378-cr, 2015 U.S. App. LEXIS 11185, at * 8-10 (2d Cir. June 30, 2015). In that case, the defendant was indicted and pleaded guilty to a narcotics importation conspiracy, in violation of Title 21, United States Code, Section 963. *Id.* at *2. Suarez was sentenced to 648 months' or 54 years' imprisonment. *Id.* at *3. At sentencing, the district court, following then existing Second Circuit precedent, acknowledged that while defendant Suarez's sentence was effectively a life sentence, it did not violate the terms of extradition, which only stated that a sentence of life imprisonment would not be sought or imposed. *Id.* Because Suarez was sentenced to a term of years and there was no assurance provided to Colombia by the United States Government that the sentence would not exceed Mr. Suarez's life expectancy, the district court therefore had the discretion to impose such a sentence involving a term of years. *Id.*

On appeal, the Second Circuit did not reach the merits of Suarez's challenge to his sentence as violative of the conditions of extradition. Instead, the panel majority *sua sponte* –

ACTIVE 30723165v3

and without a standing objection from the government below – held that Suarez's challenge was prudentially barred. *See id.* at \*8-9. The Second Circuit determined that "[g]enerally speaking, absent protest or objection by the offended sovereign, a defendant has no standing to raise the violation of international law as an issue." *Id.* at \*8. In light of this, the Court concluded that Suarez would only have prudential standing to raise his claim that the sentence violated the terms of his extradition where the Colombian government first makes an "official protest." *Id.* at \*9.

Judge Kearse, in a separate concurring opinion, would have reached the merits of Suarez's claims, but consistent with the circuit's prior decisions *Baez* and *Lopez-Imitalo, supra,* found nonetheless that the rule of specialty was not violated because a term of years rather than life imprisonment was imposed. *Id.* at \*11-12 (Kearse, J., concurring).

**B.    This Court is Required to Impose at Least the Statutory Mandatory Minimum Sentence**

When a statutory provision specifically provides how a defendant is to be sentenced, that provision trumps the general sentencing considerations of 18 U.S.C. § 3553(a). *See United States v. Carter*, 696 F.3d 229, 233 (2d Cir. 2012). In *Carter*, the defendant pleaded guilty to conspiracy to distribute in excess of 50 grams of cocaine base. *Id.* at 230. Based on defendant's criminal history in that case, the government recommended a minimum term of ten years' imprisonment, and the district court viewing the minimum as binding, sentenced Carter to ten years' imprisonment. *Id.* at 231. In evaluating the defendant's sentencing appeal, the Second Circuit considered and rejected defendant's argument that "the statutory mandatory minimum provision must specifically provide that other sentencing provisions are not controlling." *Id.* The Court instead held that if it agreed with defendant's argument, then the mandatory minimum sentence would be superfluous where there is no specific disclaimer. *Id.* at 232. The Court continued that as a matter of statutory construction, the "specific governs the general." *Id.* (citing

Page **6** of **12**

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012)). In short, the mandatory minimum statutory language need only provide the "sentencing floor"; it does not have to "specifically disclaim the general rule that a sentence must not be greater than necessary to satisfy appropriate sentencing objectives" under 18 U.S.C. § 3553(a). *Id.* at 233.

**C.    Application to Mr. Garavito-Garcia**

As a condition of Mr. Garavito-Garcia's extradition, the United States made assurances to the Republic of Colombia that "[a]lthough the maximum statutory penalty for the charge for which extradition was approved is life imprisonment, the Government of the United States assures the Government of Colombia that a sentence of life imprisonment will not be sought or imposed if Garavito Garcia is extradited to the United States." (Exhibit A). Under the controlling precedent set forth above in *Carter*, Mr. Garavito-Garcia is aware that the minimum sentence he is facing is 300 months, per the statutory mandatory minimum requirement imposed as the result of his conviction on Count Four of the Indictment. (PSR ¶ 106). As such, Mr. Garavito-Garcia respectfully submits that this Court follow the Probation Office's recommendation of 300 months' imprisonment.

Mr. Garavito-Garcia is also cognizant of the fact that under the current law of the Second Circuit and in the absence of an "official protest" from the Government of Colombia, he lacks prudential standing to challenge any sentence of a term of years as a violation of the Note. *See Suarez*, 2015 U.S. App. LEXIS 11185, at *8. That said, however, there is no indication from the United States Government that it has alerted the Colombian Government of the status of Mr. Garavito-Garcia's case or of this sentencing, as is now apparently recommended under the law in this circuit. *See id.*, as *8. Nevertheless, even if this court were to reach the merits of the diplomatic note here as it pertains to sentencing, there is no question that while the statutory

Page **7** of **12**

mandatory minimum term of 300 months likely exceeds his life expectancy, such a sentence in any event qualifies as a term of years rather than life imprisonment under the provisions of the Note. *See Sanpedro*, 352 Fed. App'x at 486.

**D.     History and Characteristics of Mr. Garavito-Garcia**

In requesting that the court follow the Probation Office's recommendation of a sentence of 300 months, Mr. Garavito-Garcia asks that this Court take into account both his family background and current medical condition in imposing the statutory mandatory minimum sentence.

**1.     Family Background**

Mr. Garavito-Garcia was born in Bogota, Columbia in 1944 and is the youngest of five children. (PSR ¶¶ 82-83). Throughout his childhood, Mr. Garavito-Garcia grew up in poor economic conditions. *Id.* at ¶ 85.  From a young age Mr. Garavito-Garcia can recall his father diligently and tirelessly working to provide the best life possible for his family. *Id.* Mr. Garavito-Garcia enjoyed a loving and supportive relationship with both his parents, until their deaths, and still enjoys a close relationship with his four siblings who are aware and have continued to support him throughout his current legal situation. *Id.* at ¶¶ 82-83.

Seeing his father's dedication to support and provide for the family inspired Mr. Garavito-Garcia to travel to and lawfully reside temporarily in the United States beginning in 1965 in an effort to obtain a better life for his own family. *Id.* at ¶ 84. Mr. Garavito-Garcia was then married to Yolanda Correa and their union produced one daughter, Brenda Scarpelli, now age 49, who currently resides in California, with the Defendant's two grandchildren. *Id.* at ¶ 86. Despite dissolving the marriage with Ms. Correa in 1978, Mr. Garavito-Garcia still maintains a tight relationship with his daughter, who has continued to provide her unconditioned love and

support to her father throughout the pendency – including her own attendance at trial – of this case. *Id.* Ms. Scarpelli describes her father as a "loving" person and expresses true concern about her father's physical and medical condition and his inability to care for himself. (A copy of her sentencing letter to the Court is attached hereto as Exhibit C).

Subsequently, Mr. Garavito-Garcia had a long-term relationship with Pilar Garcia from the late 1970's through the late 1990's. (PSR ¶ 87). From that long-term relationship Mr. Garavito-Garcia has three adult sons who all reside abroad. *Id.* at ¶ 87. Although Mr. Garavito-Garcia is no longer involved with Ms. Garcia, he continues to have a strong bond with his sons despite the distance and continues to benefit from their support throughout the pendency of this case. *Id.*

Mr. Garavito-Garcia is currently in a relationship with Maria Christina Ramirez, whom he refers to as his common law wife. Ms. Ramirez remains in Bogota, Colombia in frail health and also continues to love and support Mr. Garavito-Garcia during his current legal situation. (*Id.* at ¶ 88).

Additionally, since Mr. Garavito-Garcia's extradition to the United States on July 22, 2014, he has resided under 24-hour armed guard supervision at the Kingsbrook Jewish Medical Center in Brooklyn, New York. *Id.* at ¶ 9. During the pendency of this case, Mr. Garavito-Garcia's niece, Nancy Garavito, has visited numerous times to provide him with company and family support.

Mr. Garavito-Garcia is loved and adored by his family, in spite of his current legal situation. Defendant feels genuine sadness for putting his family through this whole process and wants nothing more than to spend his remaining days with them.

2.     **Medical History**

Mr. Garavito-Garcia is currently 70 years old and in ailing health as the result of cumulative medical trauma. (PSR ¶ 91-92). In 2011, Mr. Garavito-Garcia incurred a severe head wound as the result of a gunshot to the face. Declaration of Robert W. Ray ("Ray Decl.") ¶ 9. Since that incident, Mr. Garavito-Garcia suffers from post-traumatic focal conclusive disorder, or epileptic seizures, for which he is currently prescribed medication. (PSR ¶ 91). Further, while Mr. Garavito-Garcia was in Colombian custody, he suffered a stroke on December 31, 2013, which resulted in substantial paralysis on the left side of his body. *Id.* at ¶ 92. Now nearly 19 months following his stroke, Mr. Garavito-Garcia remains in rehabilitative recovery and is for all intensive purposes immobile, wheelchair bound and requires significant assistance even to attend to his personal needs. Moreover, Mr. Garavito-Garcia has permanent "minimal defects of long term memory and in visual construction abilities." (Ray Decl. ¶ 9).  Additionally, in May 2014, Mr. Garavito-Garcia underwent an open prostatectomy at El Tunal Hospital in Colombia. *Id.* at Exhibit A. Lastly, Mr. Garavito-Garcia has been diagnosed at Kingsbrook with an adjustment disorder, mixed anxiety, and depressed mood due to stress arising, in part, from his understandable concern for the health and wellbeing of his wife. (PSR ¶ 94).

While it was determined by this Court that Mr. Garavito-Garcia was competent to stand trial, it is nonetheless clear from his recent medical record that Mr. Garavito-Garcia's health has been in a diminishing state for some time and that for the foreseeable future Mr. Garavito-Garcia will require constant medical care at a hospital facility.

ACTIVE 30723165v3

## COLLATERAL ISSUES

**A.    Credit for Time Served in Colombia**

Pursuant to the Republic of Colombia Ministry of Justice and the Law Resolution No. 293, Paragraph 6(III)(1), Mr. Garavito-Garcia is entitled to credit for the time that he has spent in Colombian custody as a result of the extradition process. (Exhibit B, ¶ 6(III)(1)). That is, pursuant to Paragraph 11 of that same resolution, Mr. Garavito-Garcia "has the right for the requesting State [the United States] to recognize the time he was in custody as a result of the extradition process". (Exhibit B, ¶ 11).  In order that this Court issue appropriate credit in the Judgment, the Government must request a certificate from the Office of the Attorney General of Colombia to that end. *Id.* Mr. Garavito-Garcia was in Colombian custody from April 5, 2013 through July 22, 2014, a period spanning 1 year, 3 months, and 17 days. (Exhibit B, ¶ 2; PSR ¶ 9).  Mr. Garavito-Garcia respectfully requests, therefore, that the Court fulfill this condition of his extradition and credit him for the time served in Colombia incident to extradition.

**B.    Request for Court's Recommendation to BOP for Designation to Federal Medical Center-Carswell**

As discussed above, Mr. Garavito Garcia's health has continued to deteriorate over the last several years due to a head injury resulting in epileptic seizures as well as a stroke, which has caused paralysis on the entire left side of Mr. Garavito Garcia's body. (PSR ¶¶ 91-92). Mr. Garavito-Garcia is in need of constant care and assistance as he is effectively unable to move without assistance from others. Since his arrival into the United States, Mr. Garavito-Garcia has remained under the care of the Kingsbrook Jewish Medical Center, which has dutifully assisted Mr. Garavito-Garcia in both his mental and physical recovery. In light of Mr. Garavito-Garcia's age and current health condition, Defendant respectfully requests that the Court recommend to

ACTIVE 30723165v3

the Bureau of Prisons (BOP) that he serve his sentence at the Federal Medical Center-Carswell located in Fort Worth, Texas – the nearest BOP medical facility in proximity to his U.S. citizen daughter who resides in California and his nephew who resides in Nevada.

## CONCLUSION

Accordingly, it is respectfully requested that the Court, taking into account Mr. Garavito-Garcia's conditions of extradition, along with his family and medical history, follow the Probation Office's sentencing recommendation of 300 months' imprisonment subject to credit for time served while in provisional custody in Colombia awaiting extradition. It is also respectfully requested that this Court recommend to the Bureau of Prisons that Mr. Garavito-Garcia serve his sentence at the Federal Medical Center-Carswell in light of his medical needs and inability to care for himself.

Dated: New York, New York
      July 13, 2015

Respectfully submitted,

s/ Robert W. Ray

_____

Robert W. Ray
*Attorneys for Defendant Rafael Antonio Garavito-Garcia*

Fox Rothschild LLP
100 Park Avenue, 15th Floor
New York, New York 10017
Tel. No.: (212) 878-7993
rwray@foxrothschild.com (e-mail)

cc:    AUSA Shane T. Stansbury (*via ECF and e-mail*)
       AUSA Ilan T. Graff (*via ECF and e-mail*)
       USPO Jemmard Thomas (*via e-mail*)
       Rafael A. Garavito-Garcia, USM # 71263-054 (*via regular mail to KJMC, Brooklyn, NY*)

# EXHIBIT A

EMBASSY OF THE UNITED STATES

201: FEB -6  AIO :35

No. 0201

The Embassy of the United States of America presents its compliments to the Ministry of Foreign Relations of the Republic of Colombia and has the honor to refer to Ministry diplomatic note No. DIAJI/GCE 0228, dated January 30, 2014, in which the Ministry informs the Embassy that the Government of Colombia has approved the extradition of Colombian fugitive Rafael Antonio Garavito García pursuant to Resolutions No. 293, dated October 28, 2013, and No. 374, dated December 26, 2013.

Furthermore, the Embassy takes note that the Ministry requests as a condition for the extradition of Rafael Antonio Garavito García assurances that he will not be subject to "forced disappearance," torture or cruel and unusual punishment, degrading or inhumane treatment, "exile," life imprisonment, "confiscation without due process of law," or the imposition of the death penalty.

Although the maximum statutory penalty for the charge for which extradition was approved is life imprisonment, the Government of the United States assures the Government of Colombia that a sentence of life imprisonment will not be sought or imposed if Garavito García is extradited to the United States.

DIPLOMATIC NOTE

Garavito_US 000139

-2-

Regarding the death penalty assurance requested in the aforementioned Ministry note, the United States Government does not believe that such assurance is necessary in this case. Pursuant to the criminal laws of the United States, the death penalty is not an authorized punishment for the offense for which Garavito García's extradition was approved. Therefore, the death penalty cannot be requested or imposed in this case.

Regarding other assurances requested in the aforementioned Ministry note, the Government of the United States assures the Government of Colombia that no person extradited to the United States from Colombia will be subject to torture or cruel and unusual punishment, or the forfeiture of property without due process of law.

The Embassy of the United States of America avails itself of this opportunity to renew to the Ministry of Foreign Relations of the Republic of Colombia the assurances of its highest consideration.

Embassy of the United States of America,
    Bogotá, D.C., February 5, 2014.

# EXHIBIT B

**REPUBLIC OF COLOMBIA**
[SEAL]
**MINISTRY OF JUSTICE AND THE LAW**
RESOLUTION NUMBER– 293 OF
28 OCT 2013

In which a decision is made regarding an extradition request

**THE PRESIDENT OF THE REPUBLIC OF COLOMBIA,**
exercising the authority conferred upon him by Article 491 of Law 906 of 2004, and

**WHEREAS:**

1. The Government of the United States of America, through its Embassy in Colombia, by means of Note Verbale No. 0443 dated April 8, 2013, requested the temporary arrest for extradition purposes for Colombian citizen **RAFAEL ANTONIO GARAVITO GARCIA**, who is required to appear for trial for felony charges which include narco-terrorism, distribution of cocaine, and providing material support to an organization designated as a foreign terrorist organization;

2. The Attorney General in response to said request and pursuant to a Decision from April 11, 2013, issued an arrest warrant for extradition purposes of citizen **RAFAEL ANTONIO GARAVITO GARCIA**, citizenship identification No. ▋▋▋▋▋, who had been arrested on April 5, 2013 by members of the Directorate on Criminal Investigations and Interpol of the National Police pursuant to a Red Notice by Interpol.

3. The Embassy of the United States of America in our country, through Note Verbale No. 0945 from May 31, 2013, formalized the request to extradite citizen **RAFAEL ANTONIO GARAVITO GARCIA.**

Said Note Verbale includes the following:

> *"RAFAEL ANTONIO GARAVITO GARCIA is required to stand trial for felony charges which include narco-terrorism, distribution of cocaine, and providing material support to an organization designated as a foreign terrorist*

**Resolution No. 293**          **OF**
Page 2 – of the Resolution in which a decision is made regarding an extradition request

*organization. He is the subject of the fifth Superseding Indictment No. S5 12 Cr. 839, issued on January 8, 2013, at the United States District Court for the Southern District of New York, which charges him with:*

*--Count one:  Conspiracy to distribute and possess, with the intent to distribute, five kilograms or more of cocaine, knowing and intending to provide something of value to a person or an organization that has engaged or engages in terrorism or terrorist activity; having knowledge that the person or organization has engaged or engages in terrorism or terrorist activity, in violation of Title 21, United States Code, Sections 960a and 841(a).*

*--Count two: Conspiracy to distribute five kilograms or more of cocaine, having knowledge that it would be imported to the United States or into territorial waters within 12 miles of the coast of the United States, in violation of Title 21, United States Code, Sections 959(a), 812, 960(a)(3), 960(b)(1)(B), and 963, and*

*--Count three: Conspiracy to provide material support or resources to an organization designated as a foreign terrorist organization, in violation of Title 18, United States Code, Sections 2339B(a)(1), 2339B(d)(1), and 3238, and*

*--Count four: Conspiracy to acquire and transfer surface-to-air missiles, in violation of Title 18, United States Code, Sections 2332g(a)(1), 2332g(b), 2332g(c), and 3238.*

*(...)*

*Hence, the aforementioned court issued a warrant against Rafael Antonio Garavito Garcia for said charges on January 8, 2013; said warrant remains in effect and is enforceable.*

*Resolution No. 293*                                    *OF*
*Page 3 – of the Resolution in which a decision is made regarding an extradition request*

*(...)*

*The period of time in which the conspiracy counts that are described in the fifth Superseding Indictment were committed was from May 2012 until January 8, 2013. Therefore, all acts committed by the defendant in this case were effected after December 17, 1997..."*

4.  Once the request for extradition of citizen RAFAEL ANTONIO GARAVITO GARCIA was formalized, the Ministry of Foreign Affairs, through the Directorate of International Legal Affairs, Notice DIAJI/GCE No. 1112 dated June 4, 2013, pointed out that "the 'United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances', signed in Vienna, December 20th, 1988[1] is still in effect between the Republic of Colombia and the United States of America.  Without prejudice to the foregoing, Article 6, Subsection 4 and 5 from the aforementioned international document, states the following:

*"[...]*

*"Article 6*
*Extradition*

*4.    The Parties which do not make extradition conditional on the existence of a treaty shall recognize offences to which this article applies as extraditable offences between themselves.*

*5.    Extradition shall be subject to the conditions provided for by the law of the requested Party or by applicable extradition treaties, including the grounds upon which the requested Party may refuse extradition.*

*[...] (Boldface added).*

*"Pursuant to the aforementioned and in light of Articles 491 and 496 of Law 906 of 2004, the proceeding will follow Colombian law when it pertains to issues that do not fall under said Convention..."*

---

[1] Article 3, Subsection 1, Paragraph a.

**Resolution No. 293**                                                    OF
Page 4 – of the Resolution in which a decision is made regarding an extradition request

5.  Once the extradition file for citizen **RAFAEL ANTONIO GARAVITO GARCIA** has been completed, the Ministry of Justice and the Law, by means of Notice No. OF113-0013646-OAI-1100 dated June 6, 2013, referred said file to the Criminal Appellate Division of the Supreme Court for appropriate action.

6.  The Criminal Appellate Division of the Supreme Court, by ruling from October 2, 2013, having deemed the requirements posed by the applicable rules of the case as satisfied, confirmed the extradition of citizen **RAFAEL ANTONIO GARAVITO GARCIA** favorably.

Regarding the particulars the honorable Corporation [*sic*] expressed:

*"III. Conditions:*

*"1. In the event that the National Government grants extradition, it should establish as a condition of the surrender, that the person subject to extradition will not be prosecuted for prior offenses, nor different offences to the ones that gave grounds to the extradition request, for the time that the person has spent in custody as a result of this process to be granted as credit towards any possible sentence that may be imposed in the requesting country, and for the death penalty to be commuted, as well as provide that the extraditee shall not be subjected to forced disappearance, torture, or cruel, inhumane, or degrading treatment or penalties, or to sanctions of exile, life imprisonment, and forfeiture, as requested by the defense and the Public Ministry.*

*"2. By the same token, another condition of surrender of the requested individual is to respect his constitutional right by being a Colombian national[2], more specifically, in regards to the access to a public process without unjustified delays, the presumption of innocence, the assistance of an interpreter, to be represented by a defense attorney of his choosing or assigned by the State, to have enough time and the necessary means to prepare his defense, to be able to present evidence on his behalf and to challenge the evidence against him, to be under custody in dignified conditions, and for any sentence of imprisonment to be aimed essentially at reform and social adaptation.*

---

[2] Pursuant to the Criminal Appellate Division of the Supreme Court, decision from September 5, 2006, filing No. 25625, in spite of the fact that the Colombian citizen is surrendered, he shall preserve all rights inherent to his nationality which have been enshrined in the Political Constitution and in the Human Rights treaties the country has signed.

**Resolution No. 293**                                      **OF**
Page 5 – of the Resolution in which a decision is made regarding an extradition request

*"3. The National Government shall impose on the requesting State the obligation to facilitate the necessary means to guarantee the repatriation of the individual in order to safeguard the fundamental rights of the requested individual. Said repatriation should be effected in a manner that is dignified and respects the human person, in the event that his case is dismissed, he is acquitted, he is found not guilty, or once his legal situation is fully resolved in the requesting Country, or even, after he is released upon serving the sentence that was imposed originating in the charges that led to the extradition request.*

*"4. By the same token, the National Government shall establish a condition of surrender to the requesting Country and in accordance to its internal policies in the matter, to offer rational and real possibilities so that the requested individual may have regular direct contact with his closest relatives, considering that Article 42 of the Political Constitution from 1991 which recognizes family as the essential nucleus of society, guarantees its protection, and recognizes its honor, dignity and privacy; which is also protected by the American Convention on Human Rights, and the International Covenant on Civil and Political Rights in Articles 17 and 23 respectively.*

*"5. Be advised that in accordance to the provision on Subsection 2, Article 189 of the Political Constitution, it is the duty of the Government, and the President of the Republic as Head of State and as the highest leader in foreign policy and international relations, to conduct the appropriate monitoring of the conditions that are imposed on granting extradition; he must determine the possible consequences that may result in the event of non-compliance..."*

*"IV. Final Issue:*

*"Based on the previous considerations, the Criminal Appellate Division ruled that the National Government may extradite Colombian citizen RAFAEL ANTONIO GARAVITO GARCIA pursuant the aforementioned conditions as it has been proven that in lack of an applicable treaty, the requirements that are established in our criminal proceeding legislation have been met and his surrender may ensue.*

**Resolution No. 293**                                    OF
Page 6 – of the Resolution in which a decision is made regarding an extradition request

> *"Based on the aforementioned, the CRIMINAL APPELLATE DIVISION OF THE SUPREME COURT OF JUSTICE issued a FAVORABLE DECISION to the request for extradition of Colombian citizen RAFAEL ANTONIO GARAVITO GARCIA; said request was filed by the Government of the United States via diplomatic means, regarding Counts 1, 2, 3, and 4 of the fifth Superseding Indictment No. S5 12 Cr. 839 issued on January 8, 2013 by the District Court in the Southern District of New York, as requested by said Government..."*

7. Following the favorable confirmation from the Criminal Appellate Division and the Supreme Court of Justice, and taking into account what was established on Article 501 of Law 906 of 2004, the National Government is at liberty to act based on its national interests, and will grant extradition of the Colombian citizen **RAFAEL ANTONIO GARAVITO GARCIA**, identified with citizenship No. ▮▮▮▮▮▮▮, so he may stand trial before the authorities of the United States of America for the following charges:

*Count one: Conspiracy to distribute and possess, with the intent to distribute,  five kilograms or more of cocaine, knowing and intending to provide something of value to a person or an organization that has engaged or engages in terrorism or terrorist activity; having knowledge that the person or organization has engaged or engages in terrorism or terrorist activity.*

*Count two: Conspiracy to distribute five kilograms or more of cocaine, having knowledge that it would be imported to the United States or into territorial waters within 12 miles of the coast of the United States, and*

*Count three: Conspiracy to provide material support or resources to an organization designated as a foreign terrorist organization, and*

*Count four: Conspiracy to acquire and transfer surface-to-air missiles.*

The aforementioned counts are included in the fifth Superseding Indictment No. S5 12 Cr. 839, issued on January 8, 2013, in the United States District Court for the Southern District of New York.

8. As far as the information acquired, it can be established that Colombian Legal authorities are not seeking citizen **RAFAEL ANTONIO GARAVITO GARCIA**, nor does he have an criminal record.

**Resolution No. 293**                                    OF
Page 7 – of the Resolution in which a decision is made regarding an extradition request

9. The National Government pursuant to Paragraph 1, Article 494 of Law 906 of 2004, must demand from the Government of the United States of America that the requested individual not be prosecuted for a prior and different act to the one that was established as grounds to request extradition.

10.   The National Government shall order the surrender of citizen **RAFAEL ANTONIO GARAVITO GARCIA** under the commitment from the requesting State to comply with the conditions established on Paragraph 2, Article 494 of Law 906 of 2004; that is, the requested citizen shall not be subjected to forced disappearance, torture, or cruel, inhumane, or degrading treatment or penalties, or to sanctions of exile, life imprisonment, and forfeiture. It is not necessary to mention the prohibition on imposing the death penalty, as this is not a penalty that could be faced on the offenses that let to this request for extradition.

11. The requested citizen has the right for the requesting State to recognize the time he was in custody as a result of the extradition process; in order to issue said credit, the requesting State will be able to request a certificate from the Office of the Attorney General of the Nation to that effect, as determined by its competency.

Notwithstanding this right, be advised that it has been customary for the Directorate of International Affairs of the Office of the Attorney General of the Nation to forward the certification on time spent in custody for all the requested citizens on extradition proceedings to the Directorate of Consular and Immigration Affairs and Citizen Services of the Ministry of Foreign Affairs, so that the respective Consul is aware of the situation.

Finally, the National Government, through the Ministry of Justice and the Law, will forward copy of this decision to the Directorate of Consular and Immigration Affairs and Citizen Services of the Ministry of Foreign Affairs, for the purpose that has been indicated in the Presidential Directive No. 07 of 2005, and what was indicated in the decision issued by the Supreme Court of Justice.

Therefore,

**BE IT RESOLVED:**

**Resolution No. 293**                                    OF
Page 8 – of the Resolution in which a decision is made regarding an extradition request

**ARTICLE ONE:** Grant the extradition of Colombian citizen **RAFAEL ANTONIO GARAVITO GARCIA**, identified with citizenship No. ▮▮▮▮▮▮▮, so that he may stand trial before the authorities of the United States of America on the following charges:

**Count one:** Conspiracy to distribute and possess, with the intent to distribute, five kilograms or more of cocaine, knowing and intending to provide something of value to a person or an organization that has engaged or engages in terrorism or terrorist activity; having knowledge that the person or organization has engaged or engages in terrorism or terrorist activity.

**Count two:** Conspiracy to distribute five kilograms or more of cocaine, having knowledge that it would be imported to the United States or into territorial waters within 12 miles of the coast of the United States, and

**Count three:** Conspiracy to provide material support or resources to an organization designated as a foreign terrorist organization, and

**Count four:** Conspiracy to acquire and transfer surface-to-air missiles.

The aforementioned counts are included in the fifth Superseding Indictment No. S5 12 Cr. 839, issued on January 8, 2013, in the United States District Court for the Southern District of New York.

**ARTICLE TWO:** Order the surrender of citizen **RAFAEL ANTONIO GARAVITO GARCIA** to the requesting State, provided the commitment to comply with all conditions established on Paragraph 2, Article 494 of Law 906 of 2004; that is, the requested citizen shall not be subjected to forced disappearance, torture, or cruel, inhumane, or degrading treatment or penalties, or to sanctions of exile, life imprisonment, and forfeiture.

**ARTICLE THREE:** Advise the requesting State that the extraditee cannot be prosecuted nor convicted for a prior and different act to the one that was established as grounds to request extradition pursuant to Paragraph 1, Article 494 of Law 906 of 2004.

**ARTICLE FOUR:** Notify this decision to the interested party or his representative, letting him know he can file an Appeal for Reversal, which he could file in writing at

**Resolution No. 293**                                    OF
Page 9 – of the Resolution in which a decision is made regarding an extradition request

the hearing or within 10 days following this notice pursuant to Article 76 of the Administrative Procedure and Administrative Litigation Code.

**ARTICLE FIVE:** Send copy, once it is made definitive, to the Directorate of International Legal Affairs and the Directorate of Consular and Immigration Affairs and Citizen Services of the Ministry of Foreign Affairs and the Office of the Attorney General of the Nation for their respective jurisdictions.

**ARTICLE SIX:** This Resolution is in effect as of the date of execution.

**Let it be published** on the Official Newspaper, **let it be served** to the requested citizen or his representative, **let it be known** to the Ministry of Foreign Relations and the Office of the Attorney General of the Nation, and **execute.**

Given in Bogota D.C. on

28 OCT 2014

[Illegible signature]

MINISTER OF JUSTICE AND THE LAW

[Illegible Signature]
ALFONSO GOMEZ MENDEZ

# EXHIBIT C

May 28, 2015


The Honorable Jed S. Rakoff
Judge of the United States District Court for the Southern District of New York
Case Number :


Respectfully I greet in my name and that of my family and we give our thanks in advance for the attention to this request.

My name is Brenda Scarpelli and I am the daughter of Mr. Rafael Antonio Garavito. Who is waiting for his verdict, trial that took place   between 16 and March 26, 2015.


My loving father is an elderly person, over 70 years old, suffering from  epileptic attacks, while detained in Colombia  he has undergone an unfortunate physical and mental deterioration, due to a stroke, which has paralyzed his left side of his body, upper and lower limbs, which prevents him to fend for himself for even the most minimal needs, depending on a wheelchair for mobilization, has lost all control of  his sphincters and require the help of other people for survival and is in need of ongoing medical treatment. In addition his dentures were taken away from him severely compromising his chewing and swallowing efficiency resulting in impaired phonetics and speech but most importantly the digestive issues that comes along with the absence of them.


Your honor we appeal to your good heart as a fair and caring person with the hope that our concerns are brought to the consideration, because in the precarious conditions of my father's physical state, if all possible the location where my father will be serving his sentence.

I beg your Honor to please consider my letter, when you hand down dad's sentence, only you have the ability to give my father some dignity for the remaining years of his life.


Sincerely,
Brenda Scarpelli